**COMMONWEALTH ex rel. Bernard SMITH, Petitioner,**

v.

**PA. DEPT. OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2003.

Decided Aug. 5, 2003.

---

Bernard Smith, petitioner, pro se.

Timothy A. Holmes, Camp Hill, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

McGINLEY, Judge.

Before this Court are the preliminary objections of the Pennsylvania Department of Corrections (Respondent) to Bernard Smith's (Smith) petition for review filed in this Court's original jurisdiction.[1]

On February 26, 2003, Smith, proceeding *pro se*, filed an action in mandamus which this Court treated as a petition for review. Smith alleges:

### Parties

1. Bernard Smith, is the plaintiff ... an adult prisoner, incarcerated at Somerset State Prison.

. . . .

### FACTS

3. In 1992, plaintiff [Smith] was charged with Robbery, and criminal conspiracy and thereafter sentenced to a one (1) year six (6) months to five (5) year concurrent sentence by the [H]onorable C. Darnell Jones, Philadelphia County Pa. (CP# 4325, 4324; 11/92)

4. Plaintiff [Smith] was later paroled, and on 3–10–97, plaintiff was arrested and charged with VUFA [violation of the Uniform Firearms Act], and on 4–1–98 was sentenced by [H]on. Willis Berry J[r]. of Philadelphia County to nine (9) to eighteen (18) months consecutive to [J]udge Jones [sic] sentence. (CP# 0945; 3/97)

5. Judge Jones [sic] five (5) year sentence, was extended by the Pa. Parole Board, for plaintiff's [Smith's] violation of probation, and new maximum date for Robbery charge was 8–13–02.

6. In a sentence status change report (DC–23B), the defendant [Respondent] aggregated [J]udge Willis Berry's 9 to 18 month sentence, with plaintiff's [Smith's] 5 year sentence, entered by [J]udge Jones, which was to expire on 8–13–02, and after aggregation resulted in a new maximum sentence date of 9–10–03.

7. The defendant [Respondent] first errored [sic], when the records office failed to close plaintiff's [Smith's] charges under CP# 4325, 4324; 11/92, on maximum expiry date of 8–13–02, and assign plaintiff a new institutional identification number, as required by law, and DOC regulations.

8. The defendant [Respondent] is required to close institutional identification number, when a prisoner reaches his maximum expiry date, effectively paying the debt owed to society, by and through criminal law violations.

. . . .

### Unlawful Subjection to DNA Act

11. On 2–6–03, plaintiff [Smith] was forced to submitt [sic], to the extraction of his blood, for DNA data base, under 18 Pa.C.S. § 3701 effective December 16, 2002.

. . . .

13. Because the plaintiff's [Smith's] maximum expiry date for his Robbery charge expired on 8–13–02, the DNA Act would not apply, even if applied retroactively.

14. Plaintiff [Smith] is presently serving a gun offense, which is not one of the charges specifically named in DNA Act as being subject to same.

15. The defendant's [Respondent's] unlawful aggregation of plaintiff's [Smith's] separate sentences, was "proximate

---

**1.** Pursuant to 42 Pa.C.S. § 761(a)(1), this Court has original jurisdiction of civil actions against the Commonwealth government.

cause," of plaintiff's subjection to unreasonable seizure of his blood, for DNA data base.

16. The defendant's [Respondent's] aggregation also resulted in plaintiff [Smith] being denied his right to request parole consideration. . . .

17. The Pa. Constitution Art. 1 section 8, and the 4th amendment to the federal Constitution, guarantees the right of the people to be secure in their *"person,"* houses, papers, and effects, against unreasonable searches and seizures, and rights under federal 8th amendment.

18. Because of the defendant's [Respondent's] failure to adequately train employees, to respect the rights of prisoners, and require adequate legal training, [this] has resulted in the harm suffered [by] plaintiff [Smith], of physical assault and battery, by and through the forcible extraction of his blood for DNA data base.

. . . .

20. The above violations resulted in plaintiff's [Smith's] rights under 42 USC § 1983 being violated. . . .

. . . .

### Relief Prayed For

Wherefore, plaintiff [Smith] demands the following relief:

A) *injunctive relief,* enjoining the defendant [Respondent] to close CP# 4325, 4324; 11/92, and identification number DOC DJ–7618, and to assign new I.D. No [sic] to case now being served under CP# 0945, 3/97.

B) order enjoining defendant [Respondent] to expunge and destroy blood illegally extracted from plaintiff [Smith] for DNA data base on 2–6–03.

C) order to release plaintiff [Smith] on parole for unlawful aggregation, which

denied plaintiff his right to request consideration for parole. . . .

D) Declaratory relief, declaring defendants [sic] [Respondent's] actions violative of plaintiff's [Smith's] rights under, Pa. Const. [sic] Art. 1 section 8, 4th, 8th and 14th amendments of federal constitution. (Emphasis in original).

Action in Mandamus, February 26, 2003, Paragraphs 1, 3–8, 11, 13–18, 20, and relief requested at 1–5.

On April 2, 2003, Respondent preliminarily objected in the form of demurrers to Smith's petition. Respondent alleges:

### DEMURRER REGARDING AGGREGATION OF SENTENCES

. . . .

27. Because Judge Berry ordered Smith's VUFA offense to run consecutive to the sentence Smith was already serving, the Department had a duty to aggregate his sentences, and; therefore, Smith fails to establish that he has a right to not have his sentences aggregated.

28. In addition, because Smith's sentences were aggregated and he is in essence serving one combined sentence, he does not have a right to have the Court grant him injunctive relief compelling the Department to close his sentence or to close his Inmate Identification Number, or to issue him a new Inmate Identification Number.

. . . .

31. In addition, because Smith's sentences were properly aggregated, his contention that the Court should order his release on parole because his sentences were unlawfully aggregated is entirely without merit.

. . . .

### DEMURRER REGARDING DNA SAMPLE

. . . .

37. Because Smith received a sentence relating to Robbery under § 3701, he needed to provide a DNA sample; therefore, the Department should not be compelled to destroy the blood that it withdrew from Smith.

38. In addition, under this Court's holding in Dial v. Vaughn, withdrawing a blood sample from an inmate does not violate the Fourth Amendment's prohibition against an unreasonable search and seizure. . . .

Preliminary Objections, April 2, 2003, Paragraphs 27, 28, 31, 37, & 38, at 6, 7, & 9. Respondent "requests that Smith's Petition be dismissed with prejudice for failure to state a claim upon which relief can be granted." Preliminary Objections at 7 & 10.

▆▆▆▆ In considering preliminary objections, this Court must consider as true all the well-pleaded material facts set forth in the petitioner's petition and all reasonable inferences that may be drawn from those facts. *Mulholland v. Pittsburgh National Bank*, 405 Pa. 268, 271–72, 174 A.2d 861, 863 (1961). Preliminary objections should be sustained only in cases clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996).

Initially, a review of Smith's petition for review indicates that he alleges Respondent unlawfully aggregated separate sentences imposed by two different judges.[2]

In *Gillespie v. Department of Corrections*, 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987), this Court addressed a similar issue. In *Gillespie*, the Honorable Charles C. Brown of the Court of Common Pleas of Centre County sentenced Michael Gillespie (Gillespie) to a term of five to ten years for voluntary manslaughter. While Gillespie served that sentence, the Honorable Bernard J. Podcasy of the Court of Common Pleas of Luzerne County sentenced him to a term of three to six months for possession of a controlled substance. The latter sentence was to run consecutively to the manslaughter sentence. Based upon Sec-

---

2. In *Abraham v. Department of Corrections*, 150 Pa.Cmwlth. 81, 615 A.2d 814 (1992), the Pennsylvania Department of Corrections moved to open a peremptory judgment in mandamus. This Court had ordered the Commonwealth to take into custody certain classes of convicts incarcerated in Philadelphia County prisons by aggregating consecutive sentences under 42 Pa.C.S. § 9757 so that if the aggregated maximum term was five or more years confinement was with the Commonwealth (state prison system) pursuant to 42 Pa.C.S. § 9762(i). The order was designed to decrease Philadelphia's prison overcrowding. This Court modified the order to provide that, to determine place of confinement and parole, a county sentence could not be aggregated with sentences imposed later and that parole violations and completed sentences could not be aggregated with previous consecutive sentences.

In *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996), our Pennsylvania Supreme Court overruled portions of this Court's decision in *Abraham* and specifically held that component maximum sentences, each of which was under two years, had to be aggregated, and if the resulting sentence equaled or exceeded two years then parole authority rested with the parole board, not the sentencing court. Our Supreme Court noted their agreement with the Commonwealth Court's order in *Abraham* only insofar as it concerned the place of confinement. The Supreme Court emphasized that the Parole Board not the trial court has the authority to parole an individual whose aggregate maximum consecutive sentence is equal to or exceeds two years. The trial courts have no authority to grant or deny parole where the maximum is in excess of two years. Smith's argument that *Abraham* prevented the aggregation is baseless.

tion 9757 of the Sentencing Code, 42 Pa. C.S. § 9757,[3] the controlled substance sentence was aggregated with the manslaughter sentence and amounted to a total sentence of five years, three months to ten years, six months.

Gillespie sought a determination from this Court that his two sentences were improperly aggregated. The Pennsylvania Department of Corrections, the Pennsylvania Board of Probation and Parole, and Thomas Fulcomer, Superintendent of the State Correctional Institution at Huntingdon preliminarily objected by way of demurrer.

With respect to Gillespie's challenge to the legality of the aggregation, this Court noted that "[o]ur reading of the statute and interpretative case law compels us to conclude that once the sentencing court imposes a consecutive sentence, aggregation with other consecutive sentences is automatic and mandatory under 42 Pa.C.S. § 9757." *Id.* at 1065.

Here, as in *Gillespie*, 42 Pa.C.S. § 9757 applies to sentences imposed on different occasions, and his sentence on the VUFA offense was ordered to run consecutively to the sentence he was already serving. As a result, Respondent properly aggregated Smith's sentences, and he has failed to establish a clear legal right to relief.

■ Second, Respondent argues that Smith is not entitled to injunctive relief and the destruction of blood samples extracted from him.

Under 42 Pa.C.S. § 4716(a), "[a] person who is convicted or adjudicated delinquent for a felony sex offense or other specified offense and is or remains incarcerated on or after the effective date of this chapter shall have a DNA sample drawn...." Robbery qualifies as an "other specified offense." 42 Pa.C.S. § 4703. These statutory guidelines became effective June 19, 2002.

As alleged by Smith, Respondent withdrew blood for the DNA data base on February 6, 2003. Because Respondent properly aggregated Smith's sentences and because he was incarcerated for robbery at that time, he fell within the criteria of 42 Pa.C.S. § 4716(a). Therefore, Smith's DNA sample was required, and Respondent is not compelled to destroy the blood samples.

■ Third, Respondent asserts it did not violate Smith's rights to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution.

In accordance with 42 Pa.C.S. § 4717(c), "duly authorized law enforcement and corrections personnel may employ reasonable force in cases where an individual refuses to submit to DNA testing authorized under this chapter...." This statutory provision addresses Smith's concern about the withdrawal procedure for DNA samples.

In *Dial v. Vaughn*, 733 A.2d 1 (Pa. Cmwlth.1999), a blood sample was taken from Ertle Dial (Dial) for DNA testing while he was incarcerated following his entry of a guilty plea to an unspecified sex offense. Dial requested that the DNA information be removed from the data bank, and challenged the constitutionality of the

---

**3.** Section 9757 of the Sentencing Code provides:

Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum sentence shall not exceed one-half of the maximum sentence imposed.

42 Pa.C.S. § 9757.

requirement that he submit a blood sample for DNA testing under the DNA Detection of Sexual and Violent Offenders Act (Former DNA Act).[4] Dial asserted the Former DNA Act violated the Fourth Amendment to the United States Constitution. This Court observed that "the blood-testing program subjects a target population of convicted inmates with reduced privacy expectations, to a relatively minimal intrusion, in furtherance of the Commonwealth's need to maintain an identification system to deter recidivism." *Id.* at 7 (citations omitted). This Court determined that the blood sample provision did not violate the Fourth Amendment prohibition against unreasonable search and seizure.

In his petition for review, Smith alleges that Respondent violated his rights under the Fourth Amendment to the United States Constitution presumably when it took his blood sample on February 6, 2003. Although 42 Pa.C.S. §§ 4701—4741 applies to a broader class of crimes, including robbery, it is essentially a continuation of the Former DNA Act. Based on this Court's reasoning in *Dial*, the extraction of Smith's blood was not an unreasonable search and seizure.

In *Dial*, this Court discussed the Fourth Amendment to the United States Constitution and did not address Article 1, Section 8 of the Pennsylvania Constitution. These provisions of the United States Constitution and the Pennsylvania Constitution appear to be similar in that they both protect people from unreasonable searches and seizures.

However, our Pennsylvania Supreme Court has viewed Article 1, Section 8 as a source of broader protection than the Fourth Amendment. *Commonwealth v. Matos*, 543 Pa. 449, 455, 672 A.2d 769, 772 (1996). " '[A]s this [Pennsylvania Supreme] Court has stated repeatedly in interpreting Article I, Section 8, that provision is meant to embody a strong notion of privacy, carefully safeguarded in this Commonwealth for the past two centuries.' " *Id.* at 456, 672 A.2d at 773 *quoting Commonwealth v. Edmunds*, 526 Pa. 374, 394, 586 A.2d 887, 897 (1991).

In *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999), our Pennsylvania Supreme Court explained that "[t]o appreciate the reasonableness of a general search, courts must balance the individual's expectation in privacy against the government's compelling interests, such as public safety." *Id.* at 583, 738 A.2d at 1003 (citation omitted).

When the balancing test is applied in the present controversy, the Commonwealth's interest outweighs Smith's privacy rights. Maintaining a DNA data base serves an important governmental purpose of providing information to those who investigate and solve crimes. To the extent Smith contends that Respondent violated his rights under Article 1, Section 8 of the Pennsylvania Constitution, his argument is meritless.

Smith has failed to establish that the extraction of his DNA violated any federal or state Constitutional right.

Accordingly, this Court sustains Respondent's preliminary objection in the nature of a demurrer with respect to the aggregation of sentences and Respondent's preliminary objection in the nature of a demurrer with respect to the DNA sample and dismisses with prejudice Smith's petition for review for failure to state a claim upon which relief can be granted.

---

**4.** Act of May 28, 1995, P.L. 1009, §§ 101–1102, repealed by the Act of June 19, 2002, P.L. 394, No. 57, 42 Pa.C.S. §§ 4701–4741, formerly 35 P.S. §§ 7651.101—7651.1102.

## ORDER

AND NOW, this 5th day of August, 2003, the preliminary objections of the Pennsylvania Department of Corrections are sustained and Bernard Smith's petition for review is dismissed with prejudice.